# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| RAYMOND LEE, for himself, wife and for his minor children, and SHERRIL LEE, for herself, husband and for her minor children,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF UTAH, UNIVERSITY OF UTAH HEALTH SCIENCES CENTER, UNITED STATES VETERANS ADMINISTRATION, M.D. DANIEL KINIKINI, M.D. MICHELLE MUELLER, and UNITED STATES OF AMERICA,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:09-cv-00544-DN<br><br>Judge David Nuffer |

This is a suit for alleged medical malpractice arising from an aortobifemoral graft replacement procedure performed on Plaintiff Raymond Lee by Daniel Kinikini, M.D. and Michelle Mueller, M.D. at the Salt Lake City Veteran's Administration Medical Center (VAMC) on May 17, 2007. Drs. Kinikini and Mueller move for summary judgment[1] on all claims brought against them, asserting that they are, and were at the time, employees of the University of Utah School of Medicine (the University) and are therefore personally immune from suit under the Governmental Immunity Act of Utah (GIAU).[2] After conducting discovery under Rule 56(f),[3]

---

[1] Defendants Daniel Kinikini, M.D. and Michelle Mueller, M.D.'s Motion for Summary Judgment (Motion), docket no. 28, filed October 2, 2009.

[2] Utah Code Ann. § 63G-7-202; *see also* Utah Code Ann. § 63G-7-102(9) (defining "State" as including state-owned colleges and universities).

[3] Order Granting Rule 56(f) Motion, docket no. 50, filed December 22, 2009.

Plaintiffs oppose the motion,[4] alleging that Dr. Kinikini and Dr. Mueller were, at all relevant times, employees of the United States who are covered under the Federal Tort Claims Act (FTCA).[5] In reply, while continuing to assert that they were employed by the University of Utah at the time of the surgery, Drs. Kinikini and Mueller argue that summary judgment is still appropriate under Plaintiffs' position because *if* they were employees of the United States they would be personally immune under FTCA.[6]

Summary judgement is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[7] Once "a motion for summary judgment is properly made and supported," the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."[8] In a summary judgment proceeding, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party much prevail as a matter of law."[9] The issue in this case is the employment status of Drs. Kinikini and Mueller on May 17, 2007, the date of Mr. Lee's surgery. "Employment status is a question of law, appropriate for summary judgment,

---

[4] Plaintiffs' Oppostition Memorandum to Summary Judgment Motion of Defendants Kinikini and Mueller (Opposition), docket no. 53, filed March 10, 2010.

[5] 28 U.S.C. §§ 2671 - 2680.

[6] Defendants Daniel Kinikini, M.D. and Michelle Mueller, M.D.'s Reply Memorandum in Support of Motion for Summary Judgment (Reply) at 7, docket no. 54, filed March 29, 2010.

[7] Fed. R. Civ. P. 56(c)(2).

[8] Fed. R. Civ. P. 56(e)(2). *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

when all facts point to a single conclusion only."[10]

The two physicians assert that GIAU grants them immunity from suit because they are, and were at the time of the surgery, employees of the University acting within the scope of their employment. GIAU provides personal immunity for employees of governmental entities, and states:

> Except as permitted in Subsection (3)(c), no employee may be joined or held personally liable for acts or omissions occurring:
> (a) during the performance of the employee's duties;
> (b) within the scope of employment; or
> (c) under color of authority.[11]

The doctors establish their employment status with the University through the Affidavit of Lawrence Mauck, Clinical Administrative Manager for the Department of Surgery at the University.[12] In the affidavit, Mr. Mauck explains that he is responsible for managing the administrative portions of all care and treatment "provided by Department of Surgery physicians, including, without limitation, employment contracts, compensation and billing."[13] He is also responsible for managing the administrative details when other facilities request help from the University to provide treatment for patients at other facilities.[14] VAMC requested assistance from the University to perform emergency vascular surgery on Mr. Lee, and that request was

---

[10] *Jaeger v. Western Rivers Fly Fisher,* 855 F. Supp. 1217, 1220 (D. Utah 1994).

[11] Utah Code Ann. § 63G-7-202(4).

[12] Affidavit of Lawrence Mauck (Affidavit), attached at Exhibit 1 to Memorandum in Support of Motion for Summary Judgment (Supporting Memo), docket 29, filed October 2, 2009.

[13] Affidavit ¶ 3.

[14] *Id.* ¶ 5.

granted by the Department of Surgery.[15] Although they requested and were given emergency temporary privileges to perform surgery on Mr. Lee at the VAMC,[16] "the Department of Surgery did not intend for or understand that either Dr. Mueller or Dr. Kinikini would be acting as employees or agents of the VA Medical Center."[17] Further, during the relevant time, Drs. Kinikini and Mueller were employed full time by the University, holding faculty appointments in the Division of Vascular Surgery, within the Department of Surgery.[18] "The medical treatment and care rendered to Mr. Lee at the VA Medical Center by Dr. Mueller and Dr. Kinikini was within the course and scope of their employment by the University of Utah School of Medicine."[19] The University also covered Drs. Kinikini and Mueller for malpractice insurance during the May 17, 2007 surgery.[20] After surgery, the Department of Surgery billed VAMC for the doctors' surgical services to Mr. Lee.[21] Subsequently, VAMC paid the University a negotiated payment for the services rendered by Drs. Kinikini and Mueller, which was deposited into a University bank account.[22] Drs. Kinikini and Mueller did not receive any compensation directly from VAMC for their surgical services on May 17, 2007, or any extra compensation from the University. "The only compensation Dr. Mueller and Dr. Kinikini received for the

---

[15] *Id.* ¶ 6.

[16] *Id.* ¶ 8.

[17] *Id.* ¶ 7.

[18] *Id.* ¶ 4.

[19] *Id.* ¶ 10.

[20] *Id.* ¶ 11.

[21] *Id.* ¶ 12.

[22] *Id.* ¶¶ 12-13.

treatment and care they provided to Mr. Lee at the VA Medical Center was their regular salaries from the University of Utah," and the University paid all employment taxes on their salaries in 2007.[23]

While Plaintiffs do not directly refute this affidavit testimony, they argue that VAMC intended to employ Drs. Kinikini and Mueller in May 2007 under 38 U.S.C. § 7405.[24] In support of this argument, they submit letters that VAMC sent to each physician confirming their appointment from May 14, 2007 through July 31, 2007.[25] These letters provide instructions on who to contact to finalize all the paperwork for the appointments and what documents the doctors would need to provide. Along with the confirmation letter, each doctor received several federal employment forms to complete, including: Employment Eligibility Verification (Form I-9); FastStart Direct Deposit Form for Federal Employees; Statement of Prior Federal Service (Form 144); Department of Veterans Affairs, Prior VA Experience-Title 38 Physicians and Dentists (VA Form 10-3555); Department of Veterans Affairs, Employee Educational Data (VA Form 4637); Department of Veterans Affairs Certificate of Licensure, Registration, or Bar Membership (VA Form 4682-2); Department of Veterans Affairs May 14, 2007 Memorandum Accessing Sensitive Information (Automated VA Form 2105); Department of Veterans Affairs May 14, 2007 Memorandum Acknowledgement [sic] of Receipt for Policy Memorandum 05.12,

---

[23] *Id.* ¶¶ 14-15.

[24] "The Secretary . . . may employ, without regard to civil service or classification laws, rules, or regulations, personnel as follows:
. . .
(2) On a fee basis, persons in the following positions:
(A) Positions listed in section 7401(1) of this title [including physicians]."
38 U.S.C. § 7405(a)(2)(A).

[25] Confirmation Letters dated May 25, 2007, attached as exhibit C to Opposition; and attached as exhibit A to Reply.

5

"Patient Abuse" (VA Form 2105); and Appointment Affidavit (Standard Form 61).[26] Each confirmation letter clearly states, "This appointment will not become effective until this paperwork is completed."[27] The necessary employment forms were not completed by the physicians in order to effectuate the Section 7405 appointment contemplated by these letters.[28]

Eventually, Drs. Kinikini and Mueller were appointed to the VA Hospital under Section 7405. Their completed appointment affidavits reflect appointment dates of July 9, 2008 for Dr. Mueller and July 11, 2008 for Dr. Kinikini, well after the time period at issue in this case.[29] It is noteworthy that on Dr. Kinikini's completed appointment affidavit the incorrect appointment date of May 14, 2007 was corrected to July 11, 2008.[30] The uncompleted employment documents from May 2007, as well as the July 2008 completed affidavits of appointment, support the conclusion Drs. Kinikini and Mueller were not Section 7405 employees of VAMC at the time of Mr. Lee's May 2007 surgery.

Plaintiffs also assert that the Medical Education Affiliation Agreement[31] between VAMC and the University governs the employment relationship and therefore brings Drs. Kinikini and Mueller under the FTCA.[32] A portion of this agreement provides:

---

[26] Incomplete Federal Employment Forms, attached as exhibit C to Opposition; and attached as exhibit A to Reply.

[27] Confirmation Letters at 1.

[28] *See* Incomplete Federal Forms.

[29] Completed Appointment Affidavits, attached as Exhibit B to Reply.

[30] *Id.*

[31] Medical Education Affiliation Agreement (Affiliation Agreement), attached as Exhibit I to Opposition.

[32] *See* Opposition at 13.

> When providing professional services covered by this agreement, protection of faculty members (except those providing services under a contract with VA) and trainees of the affiliated institution from personal liability while at a VA health care facility will be that which is provided under the Federal Employees Liability Reform and Tort Compensation Act 28 U.S.C.2679 (b)-Cd).[33]

Plaintiffs argue that this part of "the Affiliation Agreement signifies that the University and the VA intended the doctors to be covered by the FTCA."[34] The physicians counter that the Affiliation Agreement does not "establish either (a) that Dr. Mueller or Dr. Kinikini were employed by the United States during the time period at issue; or (b) that treatment provided by Dr. Mueller or Dr. Kinikini to Mr. Lee was otherwise covered by the Medical Education Affiliation Agreement."[35]

The main purpose of the Affiliation Agreement is "for the academic purposes of enhanced patient care, education, and research."[36] Basically, it provides additional medical personnel to the VAMC, while extending an educational training experience for medical students and residents.[37] Under the agreement, it is the VAMC responsibility to appoint qualified health care professionals to the staff of the facility to provide supervision of trainees.[38]

Drs. Kinikini and Mueller maintain that they were not working within the scope of the Affiliation Agreement at the time in question. In May 2007, Drs. Kinikini and Mueller did not

---

[33] Affiliation Agreement at 2.

[34] Opposition at 14.

[35] Reply at 5.

[36] Affiliation Agreement at 1.

[37] *Id.* at 2-3.

[38] *Id.* at 3.

hold staff positions at VAMC as required under the Affiliation Agreement.[39] The VAMC simply granted "emergency privileges" to Drs. Kinikini and Mueller to perform Mr. Lee's surgery.[40] Further, the reason that Drs. Kinikini and Mueller performed Mr. Lee's surgery at VAMC was not further the goals of the Affiliation Agreement,[41] but because the VAMC did not have staff physicians that could perform the necessary surgery.[42]

Additionally, Drs. Kinikini and Mueller point to other documents to show that they were not VAMC staff under the Affiliation Agreement because there was not a vascular surgery training program in place at VAMC in May 2007.[43] Although a vascular surgery program was later established at the VAMC in July 2007,[44] Drs. Kinikini and Mueller were not listed faculty members in the training program.[45] All of these documents support the conclusion that Drs. Kinikini and Mueller were not staff members of VAMC, nor were they providing surgical services under the Affiliation Agreement when they performed Mr. Lee's surgery in May 2007.

Finally, Drs. Kinikini and Mueller argue that even if the court were to find that they were employed by the United States, as Plaintiffs suggest, summary judgment would still be

---

[39] *Id.*

[40] *Id.*; *see also* Affidavit ¶¶ 6-8.

[41] *See* Affiliation Agreement.

[42] *See* Affidavit; *see also* Memorandum from Gerald S. Trieman, Acting Chief of Surgical Services to Director (Dec. 17, 2007), attached as Exhibit A to Opposition.

[43] *See* List of Training Program Agreements, Exhibit A-2 to Integrated Institutional Agreement Between University of Utah School of Medicine and Veteran's Affairs Medical Center, attached as Exhibit C to Reply.

[44] *See also* University of Utah School of Medicine and VA Salt Lake City Health Care System Training Program Agreement July 1, 2007 - June 20, 2008, attached at Exhibit J to Opposition.

[45] *Id.* at 6.

8

appropriate because "the two physicians are personally immune under the FTCA."[46] In opposing the motion for summary judgment, Plaintiffs have continued to assert that Drs. Kinikini and Mueller are "covered by the FTCA"[47] either as employees of the United States or under the Affiliation Agreement. Yet under the FTCA, a civil action against the United States is the exclusive remedy for negligent acts committed by employees of the United States while acting within the scope of their employment.[48] Consequently, if, as Plaintiffs assert, the physicians are covered under the FTCA, they are still personally immune from suit.

Apparently, Plaintiffs recognize that the physicians are personally immune whether they are employees of the University or the United States because they have filed suit in Utah state court "against the State of Utah for the alleged acts and omissions of Dr. Mueller and Dr. Kinikini in treating Mr. Lee."[49] In the state complaint, Plaintiffs allege that Drs. Kinikini and Mueller were employed by the State of Utah at the time of Mr. Lee's surgery,[50] which is consistent with the position of the University in this case. Accordingly, Plaintiffs may pursue their claims regarding Mr. Lee's treatment by Drs. Kinikini and Mueller in state court, against the State of Utah. However, Plaintiffs cannot pursue their claims directly against these physicians in this court.

---

[46] Reply at 7.

[47] Opposition at 13.

[48] *See* 28 U.S.C § 2679(b)(1); *see also Green v. United States,* 434 F. Supp. 2d 1116, 1128 (D. Utah 2006) ("The exclusive remedy for nonconstitutional torts by government employees acting within the scope of their employment is a suit against the United States under the FTCA.").

[49] Reply at 8 (citing State Court Complaint in *Lee v. State of Utah*, No. 090420434, filed Oct. 7, 2009, attached as Exhibit D to Reply).

[50] *See* State Court Complaint at 2-3.

**ORDER**

IT IS HEREBY ORDERED that the Motion for Summary Judgment[51] filed by Dr. Daniel Kinikini, M.D. and Michelle Mueller, M.D. is GRANTED because the physicians were working within the scope of their employment, as employees of the University, at the time of Mr. Lee's May 2007 surgery and are therefore personally immune from suit under GIAU.

DATED this 22nd day of July, 2010.

BY THE COURT:

_____
DAVID NUFFER
United States Magistrate Judge

---

[51] Docket no. 28.